SCHULMEYER *v.* CENTRAL MOTOR FREIGHT COMPANY.

1. WORKMEN'S COMPENSATION—PROCEDURE TO OBTAIN COMPENSATION—FILING OF CLAIM.

Under the workmen's compensation act, as amended, an employee need not file a claim in order to receive compensation (2 Comp. Laws 1929, § 8444, as amended by Act No. 245, Pub. Acts 1943).

2. SAME—THIRD PARTY TORTFEASOR—EMPLOYEE'S ELECTION—ACCEPTANCE OF COMPENSATION.

Where employee was injured under circumstances creating a liability in defendant, who was not his employer, but received compensation checks and, upon their cessation when he was employed for about a half a day, his sending of a letter to the compensation commission informing them that he was not working and which resulted in the resumption of payments constituted an election on the part of the employee to come under the workmen's compensation act and barred recovery in his action against defendant (2 Comp. Laws 1929, § 8454).

---

REFERENCES FOR POINTS IN HEADNOTES

[2] 18 Am. Jur., Election of Remedies, § 21; 58 Am. Jur., Workmen's Compensation, § 55.

Appeal from Allegan; Smith (Raymond L.), J. Submitted October 15, 1948. (Docket No. 69, Calendar No. 44,209.) Decided December 17, 1948.

Case by LeRoy Schulmeyer against Central Motor Freight Company, a Michigan corporation, for personal injuries sustained when tail gate on defendant's truck gave way. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Troff, McKessy, Lilly & Doyle (Raymond H. Rapaport,* of counsel), for plaintiff.

*Alexander, Cholette, Buchanan, Perkins & Conklin (Edward D. Wells,* of counsel), for defendant.

REID, J. Plaintiff began this suit, October 8, 1947, against the defendant, Central Motor Freight Company, alleged negligent third party, to recover for injuries which he sustained in the discharge of his duties as an employee of the Valley Metal Products Company at Plainwell, Michigan, in the shipping and unloading department. At the conclusion of the trial and on motion by defendant, the court directed a verdict for the defendant of no cause of action on the ground that the plaintiff had made an election to take compensation. In pursuance thereto, judgment was entered for the defendant and from that judgment, plaintiff appeals.

Plaintiff's injury occurred on November 7, 1946, under such circumstances as to come under the provisions of the workmen's compensation act, Act No. 10, pt. 3, § 15, Pub. Acts 1912 (1st Ex. Sess.) (2 Comp. Laws 1929, § 8454 [Stat. Ann. § 17.189]), which is as follows:

"Where the injury for which compensation is payable under this act was caused under circumstances

creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee may at his option proceed either at law against that person to recover damages, or against the employer for compensation under this act, but not against both, and if compensation be paid under this act the employer may enforce for his benefit or for that of the insurance company carrying such risk, or the commissioner of insurance, as the case may be, the liability of such other person."

At the time of his injury, plaintiff was engaged in the usual course of his employment, and was unloading steel on behalf of his employer from a truck owned by the defendant Central Motor Freight Company. The tail gate of the truck was supported by two chains. In the process of unloading the hoist owned by and operated by the Valley Metal Products Company, the steel bars weighing approximately a ton would rest partly on the tail gate. At the time in question, when the tail gate gave way, plaintiff was injured and fell to the ground. Following the accident plaintiff was taken to the hospital, remaining there for four days.

Plaintiff did not file claim for compensation. The case comes under the amendment of 1943, under which the employee need not file a claim in order to receive compensation.* The employer began issuing compensation checks to plaintiff at $21 per week. The first of these compensation checks, based upon compensation at $21 a week, which checks plaintiff received, cashed and indorsed, over a period of 7 months, was dated November 12, 1946. Each one of these checks was drawn by the Michigan Mutual Liability Company, which company was insurer of the employer, Valley Metal Products Company, payable

---

* See 2 Comp. Laws 1929, § 8444, as amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8444, Stat. Ann. 1947 Cum. Supp. § 17.178).—REPORTER.

to LeRoy Schulmeyer (plaintiff), and the check contained the statement that the check was for compensation, and recited the period for which the check was issued as compensation, the total of previous payments made and "accident date 11-7-46." On the back of each check appeared the indorsement, "name of employee," with address, and plaintiff's own signature.

On December 11, 1946, plaintiff went back to work and tried it for 3½ hours but could not stand it. The records of the compensation commission disclose that form No. 102 was filed with the commission showing stoppage of compensation because the plaintiff had returned to work, December 11, 1946, at the same wages. Upon receipt of form No. 102, the compensation commission forwarded to plaintiff a detachable slip from the bottom of the form No. 102 in order that plaintiff could know exactly what the insurance company "had said on behalf of stopping compensation." When the plaintiff received this slip from the bottom of form No. 102, he wrote a letter to the commission. The commission received the letter, December 30, 1946, and to the letter was attached the slip from form No. 102 previously sent to plaintiff. The letter, defendant's exhibit E, read:

*"Dear Sir:*
"I am not working. I went down on 12/11/46 in the afternoon but could not stand it.

"Yours truly,
"LeRoy Schulmeyer."

The insurance company asked plaintiff to come to their office and on January 28, 1947, he met with them and gave to the insurance company a written statement, which he admits he understood and signed, which read in part, "I am at this time undecided about making a claim against the third party,

the Central Truck Company, or against my employer for compensation."

Two weeks after the meeting at which the statement was given (January 28, 1947), plaintiff again started receiving compensation checks, the first one being dated February 7, 1947. The checks were at the rate of $21 per week and were issued every two weeks thereafter and cashed by plaintiff.

In June, 1947, plaintiff went to work at a flagging job in connection with the resurfacing of US–131 and worked for about three weeks. Form No. 102 was filed by the compensation carrier with the commission, showing a stoppage of compensation because plaintiff had returned to work on June 6, 1947, at the same wages as he formerly received, and showing a total of 30 weeks compensation paid at $21 per week or $630. After that time plaintiff refused to accept workmen's compensation benefits.

Plaintiff never tendered back to the insurance company the compensation received. In addition to the compensation which plaintiff received over the period of 7 months, there was a hospital bill which he testified he knew had been paid by some one and he supposed the Michigan Mutual Liability Company paid it. He also testified he never paid the ambulance bill, never went to find out if it had been paid, and he presumed it had been paid. He further testified he never received a bill from the several doctors and he assumed the bills were all paid by the Michigan Mutual Liability Company. The insurance company had in fact paid all these bills.

Mr. Phillips, secretary of the compensation commission, testified that the procedure followed in this case was the usual customary and ordinary procedure by the commission in the awarding of compensation to an employee.

Prior to the employment and injury in this case, and while working for Mac Simbar Paper Company,

plaintiff had been injured and received compensation for 9 weeks and 2 days at $21 per week.

On the bulletin board at the office of the Valley Metal Products Company there were posted notices to the effect that the plant was operating under the Michigan workmen's compensation act. There were also signs stating that the Michigan Mutual Liability Company was the compensation insurance carrier.

Plaintiff in his testimony stated that the reason that he sent the letter, defendant's exhibit E, was "I wanted them to know I wasn't working. It was not for the purpose of getting further compensation. I wanted them to know I wasn't working. And it don't say in there I want compensation, does it?"

Notwithstanding this claim on the part of plaintiff that his writing of the letter, defendant's exhibit E, was only for the purpose of informing the commission that he was not working, and not that he should get further compensation, he must be considered to have intended the natural and inevitable consequence of his writing the letter. He had theretofore received compensation from a different employer for a different accident and no doubt was familiar with the procedure. The natural consequence of his affirmative action with respect to the injury in the instant case, in informing the compensation commission that he in fact was not working and sending along with his letter to that effect, the slip that he had received saying that his compensation was discontinued because he had returned to work, would be the resumption of compensation. We can therefore see clearly what Mr. Schulmeyer must have had in mind in sending the letter which he did send. The sending of such a letter was an act. His claim in his testimony that it was not for the purpose of getting further compensation amounts to nothing more than a mental reservation in his own mind, held back and not expressed in the letter. This

mental reservation of his own cannot be considered to obviate or do away with the effect of the act of informing the compensation commission and the employer that he was not working, and afterward accepting compensation checks.

Plaintiff's mailing the letter that he did, which must be considered to have been intended to accomplish what it did accomplish, to-wit, the resumption of payments of compensation, was an act upon his part putting himself squarely as having elected to come under the Michigan workmen's compensation act, and he thereafter accepted the benefits accruing therefrom, namely, the resumption of the payments.

The trial court correctly held that plaintiff had elected to proceed under the workmen's compensation act, and is barred by 2 Comp. Laws 1929, § 8454, from proceeding against the alleged negligent third party, the defendant in this case. The judgment appealed from is affirmed, with costs.

BUSHNELL, C. J., and SHARPE, BOYLES, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.